Your Honor, the second case in the morning is called the Village of Bull Valley v. Daniel v. Zeinz. Case number 214-0053. On behalf of the Avalon, Mr. Eric F. Reinhardt. On behalf of the Avalon, Mr. Justin M. Hanson. Thank you. Mr. Reinhardt. Thank you. May it please the court. As recently as 2012, this court in People v. Herman strictly applied 516-102 to reverse a disposition of court supervision on a DUI. In that case, this court strictly applied the plain meaning of 516-102 and found that the village prosecutor did not have a right to prosecute that DUI. That case is, for the most part, on point with this matter. In this case, Mr. Zeinz was arrested outside of the Village of Bull Valley. The evidence during the trial indicated that at all times, at all relevant times, Mr. Zeinz was outside of Bull Valley. Indeed, the trial court specifically said that it had no doubt in its mind that while the arresting officer may have been inside of Bull Valley, that Mr. Zeinz was outside of Bull Valley. Do we know when the defendant's car came to the officer's attention? All of the evidence in the record indicates that he saw him for the first time east of Ridge Road. That puts him outside the village, correct? Not only does it put him outside of the village, it puts him way outside the village, Justice. Because, in fact, the border of Bull Valley is not Ridge Road, as Officer Pidge testified. The parties did not develop the specific borders of Bull Valley in terms of what the evidence was in the trial court. But the trial judge said that at all times, Mr. Zeinz was out of Bull Valley. Well, do we take judicial notice of it, or do we find that the trial judge's finding relative to this fact is against the manifest way to the evidence? Well, the trial court's factual finding, Justice McLaren, was that he was outside of Bull Valley. This court can certainly take judicial notice of the boundaries of Bull Valley, but it's actually the village in this case that bears the burden of showing that the trial court was wrong. What happened, Justice McLaren, was that the trial court made the correct factual finding, but was wrong legally about how to deal with 516-102. The trial court made a critical legal error, which was to analogize to the arresting officer's extraterritorial ability to arrest, or that under the Code of Criminal Procedure, I think it's 107-4, a police officer can arrest outside of his own jurisdiction. That's not an issue in this case. But the trial court legally erred when it analogized to that body of law and said, well, since the officer can make an arrest outside of his jurisdiction, the village prosecutor can prosecute outside of his jurisdiction. Was there an overlapping police district involved in this case? Well, there's no doubt that it's all within McHenry County. The trial court's finding seems to be that Mr. Zines was observed between Bull Valley and the city of McHenry. So there's no doubt jurisdiction is proper. There's no issue with the court having venue. But the problem is under 16-102 whether the village prosecutor could bring the case. Well, is this judgment, in your opinion, void or voidable? It is. In Herman, the most recent discussion of this, the only language from the court is that the conviction is reversed. Actually, it was a court supervision. So the disposition is reversed. In Coitsel, they use the exact same language, that the conviction is reversed. In the pre-1974 cases, which is actually before 16-102 was adopted, they refer to the convictions as nullities. I don't believe there's a reference after 1974 to it being a nullity. So what's the remedy here? The remedy is that this disposition be reversed, vacated. What about jeopardy?  In terms of jeopardy, justices, I don't necessarily want to buy myself in case I'm making any arguments in the trial court. It's not a question of jeopardy because it was the, I don't think it's a question of jeopardy as much as it is the statute of limitations. Because this wasn't a, he wasn't, he probably wasn't properly in jeopardy. So what you're asking us to do is just simply vacate, reverse the finding conviction here and that's it, end. And whatever happens, happens? Yes. But you're not asking for any other remedy? Yes, Justice. And I have to admit to the court that that's what happened in Coitsel, that's what happened in Herman. You know, I didn't brief or study that issue, but I think that that is in line with what the other courts have done. There don't seem to be, there doesn't seem to be any cases on point in terms of it being litigated, in terms of what's going to happen, in terms of what the power parties are going to litigate the case the next time. And I know there are published opinions about that. But I think what's critical is that the village bears the burden here to show why the trial court's factual finding was wrong, that he was outside of Bull Valley. In its response, the village goes back to Officer Page's testimony. But obviously the trial court wasn't convinced by Officer Page's testimony or found it to be conclusory, or perhaps the trial court knew the specific boundary of Bull Valley. That is for the village to argue that somehow the trial court was factually wrong. What happened in this case, the reason we're here on appeal, is not because the trial court got the facts wrong. The trial court was there and is presumed to know the area and the boundaries. But the trial court got the application of the law wrong. The court analogizing into that extraterritorial area, which does not seem to be appropriate, which is legally erroneous. So basically the trial court just equated if the police officer can arrest at that spot, wherever that spot is, therefore the person who prosecutes for him or her here, being a local prosecutor, has the same authority. Yes, that is correct. Your position is, nope, they're independent. A police officer may have had the ability to arrest outside of Bull Valley, and let's assume for the sake of argument the defendant never entered Bull Valley. That does not, the prosecutor's ability to prosecute is independent of that. That's your position. Absolutely. That this matter needed to be sorted out between the village prosecutor and the state's attorney's office. They certainly, I think when mistakes like this happen, we always assume that things are happening fast. But this was a misdemeanor offense. Nobody was hurt. It was an 18-month statute of limitations. The parties in the trial court, or the prosecuting authorities, had plenty of time to sort this out. They could have sorted it out. They should have sorted it out. It was a prosecution that should have been properly brought by the state's attorney's office under the plain meaning of 6102. And the trial court even said they were going out on a limb, which I think is further evidence of his factual finding. He said he was going out on a limb. He commented on him needing guidance from the appellate court because in him, I think in the trial court's mind, that's evidence of the trial court's factual finding that at all times he was outside of Bull Valley. What the trial court didn't know what to do was with 16102. And so I don't think there's any doubt that the trial court's factual finding is that he was outside of Bull Valley. Otherwise, to use his language, he wouldn't have had to go out on a limb. He had to go out on a limb to figure out what to do about the argument regarding 16102, but not with respect to this issue of where Mr. Zines was. Is it your position that the correct prosecutor would have been the state's attorney's office in the county in which that took place? Yes. Is it also your position that the state's attorney could not have delegated authority to prosecute this case to a village prosecutor because it took place outside the municipal corporate limits of the municipality? Yes. Whereas if it happened within the municipal corporate limits, the state's attorney could have granted authority to prosecute the case? Yes. The 516-102 says the municipal attorney may prosecute if written permission to do so is obtained from the state's attorney. Mr. Zines is not arguing anything about the specifics of that appointment. Other defendants have raised that argument. Mr. Weider and Mr. Palmer raised those arguments both for the first time on appeal and said, well, wait, we didn't see the written letter, or, wait, the wrong state's attorney made the appointment. In other words, in Palmer, which is cited by the village, the defendant was making a very, very technical argument that the prior state's attorney in office had appointed the village prosecutor, and then Mr. Palmer said, well, wait, we don't have an up-to-date letter. Mr. Palmer and Mr. Weider both lost their appeals, according to the decisions, because they had waived that issue by not raising it in the trial court. I would also note how unbelievably technical those types of arguments are. It's almost an ambush, aside from the waiver issue. It's almost an ambush to say, well, we don't have the right letter or the letter isn't dated correctly. That is not Mr. Zines's argument, and the village refers to some sort of burdensome application of 516-102. We are not asking for that type of application of 516-102, but rather the plain meaning of 516-102 be applied, just as it was in Herman, just as it was in Coitzle, to say that this was not brought by the correct prosecuting authority. This was not an ambush sort of situation, which is what I think we see in the other cases, and it certainly wasn't a waiver issue, as trial defense counsel raised it at his motion for directive and then also at his motion for new trial. So there are certainly no waiver issues. Was this squad car equipped with a dash cam? I do not know the answer to that, Justice. I apologize. That certainly would have helped because the officer, I think the officer gave a conclusion when he said he was just coming out of Bull Valley. What didn't happen in the trial court was establishing through Officer Page exactly what he thought the border of Bull Valley was. There's no doubt that he thought the border of Bull Valley was Ridge Road. He specifically stated that. That is not the case. In any event, if he seized him, even if he were to accept for whatever reason that Ridge Road is the border of Bull Valley, he says he saw him for the first time east of Ridge Road, and I have to make this point. He doesn't explain whether he could have been turning off of Ridge Road, whether he could have been turning off of some other road. So if you accept that the border of Bull Valley is in fact west of Ridge Road, then there's not enough information to say one way or the other whether he had necessarily been coming out of Bull Valley. But this isn't necessarily for Mr. Zienst to argue at this point because the court said, there is no doubt in my mind that he was outside of Bull Valley at the relevant times. So it's really upon the village to show somehow that that factual finding was manifestly erroneous. If they want to take a position in this court that he was inside Bull Valley. With respect to the legal issue, the village's only argument seems to be that it would be overly burdensome to apply 16-102 in this way. Yet every court that has considered 16-102 in this way has applied it in a straightforward manner. Whether that is burdensome to a particular litigant is not of any legal importance. Is the officer's statement that he was just coming out of Bull Valley circumstantial evidence sufficient to convict him of driving within the jurisdiction of Bull Valley? No, because Officer Page's understanding of the borders of Bull Valley were not established. So when he says he was just coming out of Bull Valley, did he mean that he had just crossed Ridge Road? That's in fact not the border of Bull Valley. And so that is not the type of evidence that is sufficient because it is a conclusion. I will absolutely concede that that should have been nailed down in the trial court what the specific borders were. But this court can take judicial notice of that fact. And that dovetails nicely with giving the trial court the deference it deserves, which is when the trial court said he was outside of Bull Valley. So the heavy lifting here comes on the part of the village who is trying to say both that the trial court was factually wrong, but perhaps legally correct. I'm not sure what the village's position is on that. But that the trial court was factually wrong, but that he was in Bull Valley at some point, even though the trial court said the exact opposite. And even though it would appear that if this court were to take judicial notice of the boundaries, that in fact the boundary of Bull Valley is west of Ridge Road. And so I think there is not a sufficient record. But that doesn't hurt the appellant in this case since it was the trial court's factual finding which indicated that he was outside of Bull Valley. So if Mr. Dines was outside of Bull Valley at all times as the trial court indicated, then 516-102 by its plain meaning should apply. And this court should reverse the court supervision or the disposition in this matter and find that the finding of the village was not the correct prosecuting authority. I would like to reserve the rest of my time for rebuttal if that's okay. Thank you. Thank you. Do we have any other questions? No. Mr. Hanson. Thank you, Your Honor. Good morning. Good morning. I'll start off by making two points of clarification. First of all, when the appellant references that the judge beyond a reasonable doubt and without any sort of question found that the defendant was always outside the village of Bull Valley, I think that misstates the record in this case. Officer Page testified during his direct examination in answer to this question. The prosecutor said at any point in time did Mr. Dines' vehicle travel in the village of Bull Valley. The officer's direct answer to that question in the record, it came out of the village of Bull Valley. I just didn't see the violation right there, any line violation. The officer's testimony, considering the question that was asked. Isn't the point that if the officer doesn't know where Bull Valley begins and ends, his statement and giving it full faith, you know, I saw someone walk through the door, but if I don't know where the door is, doesn't that undermine the conclusory statement? I think it would undermine the conclusory statement if that was part of the trial court record, and that goes to my second argument here. Counsel has asked in reply brief this court to take judicial notice of certain maps. I think it's absolutely entitled to do that. But if you look at People v. Clark, the case that counsel cites in support of that notion, People v. Clark is clear. The judicial notice, once it's taken by the appellate court, is just for general geographic locations. In that case, it was to establish that a park as part of a drug offense was north of where the alleged offense took place. The appellate court said in People v. Clark it couldn't use it for specific details like the distance between the offense and the location of the park. More importantly, Clark said, and Clark is controlling on this issue, that it does not add to the trial court record. The appellate court is only taking judicial notice of it for the purposes of understanding a statement made at trial. Wouldn't that be exactly what we're doing here? I don't think so. To understand the officer's conclusion? No, because I think what counsel is asking you to do is impeach or doubt Officer Page's statement because of these maps that he's introduced now on appeal. I think there are general things that this court could use those maps for, perhaps to understand what police district lies east of the village of Bull Valley. But I don't think you can use it for a substantive point to say, in fact, we disagree now with what Officer Page's testimony was about the eastern border of Bull Valley because that's not part of the trial court record. And I think that dovetails into what Judge Wilbrandt actually decided in this case. Judge Wilbrandt did not doubt. There's no indication in the record that he doubted what Officer Page's testimony was. And again, I disagree with counsel's recitation of the record. When trial counsel for the defendant made an argument specifically that there was no evidence in the record that the defendant was in the village of Bull Valley, the court specifically responded to that by saying, no, there was testimony from Officer Page that he was in the village of Bull Valley. Defense trial counsel made the same argument then at the close of the case. He said, Judge, there's no evidence that this defendant was ever in the village of Bull Valley. Again, the trial court referring back to Officer Page's testimony, crediting Officer Page's testimony, said, no, the officer clearly testified that his vehicle was in Bull Valley just prior to him seeing the lane violation. And then again, later on, the trial court makes this analogy to an extraterritorial arrest. And I think there's an important thing to note about the court's analogy. I don't think an officer's ability to make an extraterritorial arrest is controlling on this issue. But his legal reasoning is sound. It's sound because in order for an officer to make an extraterritorial address, he has to be arresting him for an offense that occurred within that officer's village. So the only way that Judge Wilbrandt's reasoning makes any sense... Did he ever say that? Did he ever say... Did the trial court ever make that connection? I don't know specifically without looking at the record. I don't know if he specifically said that... I don't know if he specifically said while giving that reasoning that Officer Page was... Excuse me, Officer Page was in the village. What the trial court did say is these were written as state charges, and I'm quoting here, and that the officer was a sworn officer. If he saw some indication that the offense occurred in Bull Valley, he could investigate and make those steps pursuant to the authority of the state of Illinois. Judge Wilbrandt concluded that happened. Okay. Does that give the local prosecutor authority? I'm sorry? What gives the local prosecutor authority? That the violation itself, or that the trial court record establishes the violation itself, the DUI violation, occurred while the defendant was driving in the village of Bull Valley. It doesn't matter that the lane violation occurred once he was west of the border. It doesn't matter that Officer Page did not stop and arrest him until he was west of the border. What matters is that the trial court record in this case is sufficient to show that Mr. Zines was under the influence of alcohol when he had just been in the village of Bull Valley moments before. And that's where we get to my overly burdensome argument. The point is not that we're trying to read the language of the statute differently. The point is the statute says the municipal prosecutor can prosecute if the offense occurs within the village of Bull Valley. Not the investigation. So you would concede, then, we would have to vacate the improper lane usage? Yes. With the DUI, we know not only from the cases that I cited in my brief, but simply common sense. If you are impaired moments after you leave the village boundary, you were impaired moments before when you were just in the village boundary. And, again, with all due respect to the maps that are now on the record on appeal for this court to take judicial notice of, none of that is part of the trial court record. And I disagree that Judge Wilbrandt's statements when talking about the motion to reconsider say that he has no doubt in his mind that the defendant was never in the village of Bull Valley. Judge Wilbrandt was saying that the offense, the lane violation, occurred outside the village of Bull Valley. There is no doubt that is what Officer Page said. But that does not call off the reasonable inference from the fact that if he was drunk, Mr. Ziner was drunk, a few moments after he left the village, he was drunk when he was in it a few moments before, and the DUI violation should stand. This court should affirm what Judge Wilbrandt found. Is there any other evidence other than Officer Page's statement that the vehicle came out of Bull Valley, I just didn't see the lane violation there? Is there any other evidence that the defendant was driving in the jurisdiction of Bull Valley? There is not. So it's simply that statement? It's simply the officer's eyewitness testimony that he saw him driving out of the village of Bull Valley. It's that one statement, though, of reflecting what he saw, correct? Yes. If I can dovetail off of Justice Spence's question, there is another point for this court to consider. This defendant was charged in May of 2012. This case went to trial in June of 2013. For those 13 months, the village was the only prosecutor that ever appeared on this case. Judge Wilbrandt specifically noted that when deciding this case. While appellate counsel argues that the state's attorney and the village should have sorted this out during those 13 months, there was no indication from the defendant ever, until the close of the prosecution's case, that this was going to be an issue for the defendant to raise. And the village's position is now what it has always been. The offense occurred in the village of Bull Valley. There was nothing for us to sort out. I don't understand how you're prejudiced by this argument or the implications of this argument. The only prejudice would be in providing more of a record to point Justice Spence to. At trial, the officer's eyewitness testimony, the statement that Justice Spence referred to, is what we believe sufficiently proves that the vehicle was in Bull Valley. Had there been a pretrial motion, we could have developed that record further, knowing that the defendant and his defense counsel thought there was a possibility the wrong prosecutor was handling this case. There would be more of a record to point to, in other words. But whose obligation is that? Isn't it your obligation to know whether you have authority to prosecute or not? It is, and in this case our position is that we do. But you hold your hat on a conclusory statement. He was coming out, the defendant was coming out of the village of Bull Valley. That's right. That's it. That's right. No factual basis for that opinion. Nothing else. Just an opinion. Respectfully, I disagree that there's no factual basis for the opinion. The officer testified prior to that point in the record what his experience was as a Bull. No. Factual statement as to where the boundary is. What street he was on. The officer testified about what the boundary is for Bull Valley. It is wrong, right? Not in the trial court record, no. Well, he's either right or wrong. Either this road is the boundary or it is not. And you're saying we have to put blinders on because Clark says we won't take distances based on judicial notice. Is that your point? I'm saying that this court, in reviewing whether or not the trial court made a proper factual finding, has to defer to the trial court's findings. In this particular case, the trial court found that the defendant's vehicle was in the village of Bull Valley just prior to Officer Page effectuating his traffic stop. Isn't the answer nonresponsive to the question? Because it could be interpreted to suggest a direction similar to north, south, east, or west he was coming out of, which meant that in relative terms I gather that he was driving east as opposed to driving west, as opposed to driving north or south. Just as if he had said he was driving into the village, it doesn't mean that he necessarily had reached it. It was that he was essentially driving in the direction that had he proceeded past the territorial limits of the city, that he would in fact be in the city because that was the direction he was going in. But it doesn't necessarily establish unequivocally that he was actually in the village. I agree that Officer Page might have phrased his answer better, but it's also important to note that there was no objection at the point to the answer being nonresponsive. Why should there be an objection to an irrelevant immaterial response? If anything, the state should have objected, moved to strike the answer, and said, please answer the question. Where did you see, or rephrase the question and say, where did you see the vehicle inside the city or the village? I'm sure that there are things, including in this case, that the prosecution's trial counsel could have done differently to better substantiate that. And I guess back to Justice Spence's point, had the issue ever been raised prior to the motion for directed verdict, that is something that we could have addressed better, as appellate counsel says, by creating a fuller record as to the boundaries of the village. But the trial court in this case gave credence to Officer Page's testimony. And the only suggestion now comes in a reply brief by way of maps that not only does appellate counsel want you to look at and say, these must be authentic and germane to the issue before you, but you should use them to impeach the evidence that the trial court looked at and the trial court made its decision based upon. That's not the point of allowing things to be observed by judicial notice on review. And not only that, it gives no deference, then, to the trial court record and what the trial court made its decisions based upon. It adds a whole new wrinkle of introducing evidence into a case. Because you're not just saying this was the boundary. You're saying Officer Page was wrong when he identified the boundary. And those are things that, in either instance, the trial court had the opportunity to consider when it made its findings. Thank you. What's your position relative to jeopardy attachment? I think in this case, this is not a question of it being an improper venue. It is not an issue of there being improper subject matter jurisdiction or anything like that with regard to the defendant. So if the court was to reverse the case, reverse the supervision, and remand it back to the trial court, we would have to talk with the state's attorney about prosecuting the case again. And if we went forward, I do not think that the defendant could make a double jeopardy claim. I have not researched that issue. Any other questions? No. Thank you, sir. Thanks. Mr. Reinhart. The appellant in this court is not attacking a factual finding of the trial court. In the trial court, the judge said there is no doubt in the court's mind that when the officer saw him, the officer may have been within the village limits of Bull Valley, but the defendant was outside those corporate limits and not in a neighboring municipality. I think he was in the county jurisdiction at that time outside the corporate limits of Bull Valley. When counsel referred to the trial court's finding about that he came out of Bull Valley, the trial judge was repeating the officer's testimony at the motion for directed stage. The trial court denied the motion for directed and said the words, there was testimony that. That is a critical distinction. The trial court's final statement on where Mr. Zines was at all times was that he was outside the village of Bull Valley. For the first time in its response, the state has argued that that factual finding is wrong, which is why I have attached the maps in my reply to deal with that response. During the motion for new trial hearing, it was not fleshed out or that position was not fleshed out. They rather debated the legal merits of the extraterritorial arrest. But the final factual finding is that Mr. Zines at all times was outside of Bull Valley. The appellant is not attacking a factual finding and trying to put evidence before this court. Well, you just said at all times he was outside the jurisdiction. About two minutes prior, you said that the judge made a finding that when the officer saw him, he was outside the jurisdiction. Those two statements aren't equivalencies in my mind. Well, the trial court, if I was unclear, I apologize. The trial court was saying that Page, the arresting officer, testified that he was coming out of Bull Valley. But we also have to remember that the trial court heard Page also say that Ridge Road was the boundary. The trial court also heard Page give no other information about where he saw him. Page says he saw him for the first time east of Ridge Road. Bull Valley is west of Ridge Road. Even if Ridge Road was the boundary, which it's not factually, at all times, Page says he saw him east of Ridge Road. He could have turned off of Ridge Road. He could have been drinking in a ditch on 120 and then drove on 120. He could have been coming out of a farmhouse. He could have been coming out of a field. I'm not making an argument that a spaceship dropped him outside of Bull Valley. He could have been drinking outside of Bull Valley and then driving outside of Bull Valley. The only evidence in the record is Page saying he came out of Bull Valley. But Page also got the boundary wrong, and the trial court may have known that because the trial court said the defendant was outside those corporate limits. So it is not the appellant that is attacking the factual finding. It is the village that is attacking the factual finding that he must have been inside of Bull Valley at some point. In Herman, there was no pretrial motion regarding this issue, and that was in 2012. The appellant is bringing this up, brought it up in the trial court, brought it up at the motion for directive, brought it up at the post-trial level. In Herman, I don't think in Coit Soul, I don't think in any of the cases that have applied in 16-102, has there been a pretrial motion on the matter. But certainly Mr. Zients didn't weigh this issue in any way, and there was definitely not a pretrial motion in Herman. In fact, the court's most recent pronouncement on 16-102, it seems to me that Mr. Herman, or excuse me, it's actually Ms. Herman, Ms. Herman may have brought this up for the very first time in the appeal court. And that was what came with the Herman court, was that it came up for the first time in the appeal. Now, that's different. The Palmer and Guayada courts said that there was waiver. But, of course, that issue wasn't quite as, you know, that issue was about whether they had the proper right. Also, further evidence of the trial court's factual finding. The trial court says some interesting things that demonstrate his subjective thoughts on the matter. He refers to whether or not if this was an ordinance violation, whether or not the village would have to prove that it was within, that the offense occurred within the village. The trial court said, in fact, since this isn't an ordinance violation, the village doesn't have to prove that. Which means that the trial court thought the offense occurred, or that Mr. Zients was viewed at all times outside of the village. For the reasons stated in our briefs, we'd ask that the court, that this court follow the trial court's factual finding, but find that the trial court misapplied 16-102 and vacate or reverse this disposition. Any other questions? Thank you. We'll take the case under advisement. There will be a short recess.